IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAURA L. WRIGHT, | ) | |
| | ) | |
| Plaintiff, | ) | CV NO. 5:13-CV-449-DAE |
| | ) | |
| v. | ) | |
| | ) | |
| JOHN McHUGH, Secretary, | ) | |
| Department of the Army, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S
HOSTILE WORK ENVIRONMENT AND REASONABLE
ACCOMMODATION CLAIMS

Before the Court is a Motion to Dismiss filed by Defendant John

McHugh, Secretary, Department of the Army ("Defendant"). (Dkt. # 3.) Plaintiff

Laura L. Wright ("Plaintiff") did not file a response. The Court held a hearing on

Defendant's Motion to Dismiss on January 17, 2014. At the hearing, Anita

Anderson, Esq. appeared on behalf of Plaintiff; Robert Shaw-Meadow, Esq.

appeared on behalf of Defendant. For the reasons that follow, the Court **GRANTS**

Defendant's Motion to Dismiss (Dkt. # 3).

1

<u>BACKGROUND</u>

On May 28, 2013, Plaintiff filed the instant action for recovery pursuant to Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, and the Americans with Disabilities Act. ("Compl.," Dkt. # 1.) Plaintiff claims that Defendant engaged in unlawful discrimination by subjecting her to harassment, hostile work environment, and retaliation on the basis of her age, disability, and sex. (<u>Id.</u> ¶ 8.)

Plaintiff is a former civilian veterinarian for the Department of the Army at Fort Sam Houston in the Army's Anesthesia Support team, Animal Medicine Branch. (<u>Id.</u> ¶ 6.) Plaintiff's duties included the care, treatment and management of laboratory animals and government-owned animals used for training soldiers for emergency and combat medical treatment. (<u>Id.</u> ¶ 9.)

Plaintiff claims to suffer from attention deficit hyperactivity disorder ("ADHD"). (<u>Id.</u> ¶ 6.) Plaintiff does not claim that she was diagnosed with such a disorder, but rather claims that she "meets the diagnostic criterion for ADHD as set out in the Diagnostic and Statistical Manual of Mental Disorders, Edition IV ("DSM-IV"), which provides, in relevant part:

1. Six (or more) of the following symptoms of hyperactivity-impulsivity have persisted for at least six months to a degree that is maladaptive and inconsistent with developmental level:

   Hyperactivity

2

    a.  Often fidgets with hands or feet or squirms in seat
    b.  Often leaves seat in classroom or in other situations in which remaining seated is expected
    c.  Often runs about or climbs excessively in situations in which it is inappropriate (in adolescents or adults, may be limited to subjective feelings of restlessness)
    d.  Often has difficulty playing or engaging in leisure activities quietly
    e.  Is often "on the go" or often acts as if "driven by a motor"
    f.  Often talks excessively

Impulsivity

    g.  Often blurts out answers before questions have been completed
    h.  Often has difficulty awaiting turn
    i.  Often interrupts or intrudes on others (e.g., butts into conversations or games).

(Id.)[1]

During December 2009, Dr. Kristen Rohde, D.V.M., one of Plaintiff's supervisors, allegedly played a joke on Plaintiff concerning her ADHD.[2]  (Id. ¶ 14.)  Plaintiff complained to Dr. Rohde, but Dr. Rohde allegedly said it was funny and told Plaintiff that "she should [get] over it."  (Id.)

On December 29, 2009, Dr. Rohde counseled Plaintiff regarding several of Plaintiff's behaviors that were inappropriate for the workplace.  (Id. ¶ 12.)  Dr. Rohde's memorandum listed behaviors such as: eavesdropping, interrupting conversations, overreacting and misinterpreting overheard

---

[1] At the hearing, counsel for Plaintiff averred that Plaintiff had a medical diagnosis from a doctor in Virginia.  However, neither Plaintiff's Complaint, nor any other document in the record reveals anything other than Plaintiff's "self-diagnosis."

[2] Plaintiff does not provide the factual background regarding the joke.

3

conversations, barging into other employees' cubicles to talk and interrupting their work without consent, discussing matter related to the Army's mission with superiors not in Plaintiff's chain-of-command and with strangers.  (Id.)  At the meeting, Dr. Rohde instructed Plaintiff to announce "knock-knock" before entering someone else's cubicle and to quit sending emails to other employees.  (Id. ¶ 15.)  Dr. Rohde also reprimanded Plaintiff for setting up a study session without her approval for an upcoming veterinary exam related to the use of animals by the military and other federal agencies.  (Id.)

On January 8, 2010 and January 9, 2010, Dr. Rohde again counseled Plaintiff about her behaviors.  (Id. ¶ 16.)  Plaintiff asked Dr. Rohde to consider the impact of her ADHD.  (Id.)

On February 8, 2010, Dr. Rohde and Dr. Deaton, Dr. Rohde's supervisor, counseled Plaintiff once again.  (Id. ¶ 17.)  At this meeting, Plaintiff asked both supervisors to accommodate her ADHD and referred them to a website providing recommended accommodations for a wide variety of disabilities covered by the ADA.  (Id.)  She also gave both supervisors a copy of "ADHD for Dummies."  (Id.)  After the meeting, Plaintiff distributed ADHD literature to her coworkers, which she was later reprimanded for.  (Id. ¶ 18.)

On March 1, 2010, Plaintiff requested an accommodation, which included being moved away from other cubicles because of the serious distraction and her inability to tune it out. (Id. ¶ 19.) Dr. Rohde denied that request. (Id.)

On March 5, 2010, during a training exercise, Plaintiff improperly anesthetized a goat. (Id. ¶¶ 22–24.) During the exercise, she administered the first dosage of anesthesia, but the goat did not respond. (Id. ¶ 22.) She then gave the goat additional anesthesia. (Id.) According to Plaintiff, "[t]he goat went down[,] but was over-anesthetized and needed 'bagging' i.e., oxygen and monitoring to prevent tachycardia until the animal is stabilized, a time-consuming activity." (Id.) Dr. Rohde reprimanded Plaintiff for the improper anesthetization. (Id. ¶ 24.)

On March 10, 2010, Plaintiff informed Dr. Rohde that she was planning on submitting her required written reasonable accommodation forms. (Id. ¶ 20.) On March 17, 2010, Plaintiff filed her formal request for accommodation and gave a copy to Dr. Rohde. (Id. ¶ 25.) In Plaintiff's request, she sought leave to have her ADHD medications adjusted, a cubicle change, and more structuring of her required activities to prevent disruption of other employees' activities. (Id.) That same day, Dr. Rohde filed a formal request for permission to terminate Plaintiff. (Id. ¶ 26.)

On March 26, 2010, Dr. Rohde issued Plaintiff a letter of termination effective April 2, 2010. (Id. ¶ 27.) The letter stated that Plaintiff's termination was

due to an improper anesthetization of a goat on March 5, 2010, interruption of others' conversations, not being respectful of other employees' work spaces and privacy, interrupting training classes with comments unrelated to the topic, distracting others from their focus on work, discussing the mission with outsiders, and being rude and unprofessional.  (Id. ¶ 28.)

On March 30, 2010, Plaintiff contacted Equal Employment Opportunity ("EEO") Counselor Ernest Ytuarte to allege that her receipt of a termination letter was retaliation for her request for a reasonable accommodation and to allege that she was subjected to discrimination on the basis of her age, disability, and sex.  (Dkt. # 3, Ex. 1 ¶ 5.)[3]  Ytuarte conducted her intake counseling on April 1, 2010.  (Id.)  On April 29, 2010, Plaintiff was provided a Notice of Right to File a Formal Complaint.  (Id.)  The Notice advised Plaintiff that she had fifteen days from receipt of the notice to file her complaint.  (Id.)  Plaintiff's counsel, Lorenzo Tijerina, acknowledged receipt of the notice on April 29, 2010 by

_____

[3] The Supreme Court has held that in deciding a motion to dismiss, a court may consider documents incorporated into the complaint by reference.  Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007).  By attaching documents to a motion to dismiss that are referred to in a plaintiff's complaint and that are central to her claim, "the defendant merely assists the plaintiff in establishing the basis of the suit, and the court in making the elementary determination of whether a claim has been stated."  Collins v. Morgan Stanley Dean Witter, 224 F.3d 496, 499 (5th Cir. 2000).  In this case, the notices to Plaintiff are referenced in Plaintiff's Complaint and are dispositive when determining whether Plaintiff has failed to state a claim due to a lack of administrative exhaustion.

email.  (Id.)  However, Plaintiff did not file a Complaint within the fifteen-day time period, and Ytuarte closed the docket.  (Id.)

On May 13, 2010, Plaintiff was issued a second termination letter. (Compl. ¶ 30.)  The second letter advised that Plaintiff's effective termination date was changed to May 13, 2010.  (Id.)  The letter also advised that Plaintiff would receive disability payments from March 26, 2010 to May 13, 2010, as a result of Plaintiff's respiratory illness and post-traumatic stress disorder from her prior employment at the United States Department of Agriculture ("USDA").  (Id.)

On June 14, 2010, Plaintiff again contacted EEO Counselor Ytuarte alleging reprisal from the second termination letter.  (Dkt. # 3, Ex. 1 ¶ 6.)  Plaintiff also alleged her previous complaints of hostile work environment discrimination on the basis of her age, disability, and sex, and denial of a reasonable accommodation.  (Id.)  In a letter to Plaintiff's counsel, Ytuarte explained that he did not accept Plaintiff's complaints of age, disability, and sex discrimination because those claims were identical to earlier claims that had expired.  (Dkt. # 3, Ex. 1-C.)  Ytuarte stated,

> Paragraph (b) (1-20) [describing the alleged harassment] is dismissed in accordance with the referenced provisions of 29 Code of Federal Regulations (CFR) 1614.107(a)(2), which states that a complaint that fails to comply with the applicable time limits specified in 1614.105 and 1614.106 may be dismissed.  29 C.F.R. 1614.106(b) states that a formal complaint of discrimination must be filed within 15 calendar days from receipt of the "Notice of Right to File" which gives the complainant notice of his/her right to file a formal complaint.

<u>You/your client made previous contacts with the EEO office,
specifically 30 March 2014, subsequently, you/your client received a
Notice of Right to File on 29 April 2010 via email and acknowledged
receipt of such; and did not pursue an EEO complaint within the
required timeframe</u>.  To allege discrimination and continuous
harassment for the time period in question prior to 29 April 2010
would be untimely filed as you/your client had the opportunity to
pursue this claim during her previous contacts with the EEO office.

(<u>Id.</u> (emphasis added))

However, Ytuarte advised that he did accept Plaintiff's reprisal
claims because the previous complaint concerned a letter of termination dated
March 26, 2010, which had subsequently been rescinded.  (<u>Id.</u>)  According to
Ytuarte, the new complaint of reprisal was based on the second termination letter,
issued May 13, 2010, and therefore was a "new claim" that was timely filed.  (<u>Id.</u>)
Ytuarte stated that the letter operated as a "partial dismissal" of Plaintiff's
complaint and that "[i]f [Plaintiff] believe[d] the claims in this complaint ha[d] not
been correctly identified, please notify [Ytuarte], in writing, within <u>five (5)</u>
<u>calendar days</u> after you receive this letter, and specify why you believe the claims
have not been correctly identified."  (<u>Id.</u>)

On July 27, 2010, Plaintiff filed a formal complaint of discrimination
and reprisal with the Department of Army.  (Compl. ¶ 31.)  On February 2, 2011,
the Department conducted a formal investigation and fact-finding conference.  (<u>Id.</u>)
The investigator did not find that Plaintiff was subject to discrimination or reprisal.
(<u>Id.</u>)

8

In May 2011, Plaintiff filed charges against Defendant with the Equal Employment Opportunity Commission ("EEOC").  (Id. ¶ 32.)  Plaintiff requested a formal hearing and investigation.  (Id.)  Nearly two years later, on April 24, 2013, the administrative law judge assigned to the case issued an order setting a hearing on April 30, 2013.  (Id. ¶ 35.)  On April 25, 2013, Plaintiff informed the administrative law judge that because the EEOC had not issued a final decision within 180 days, Plaintiff intended to pursue her claims in federal court and therefore withdrew her complaint with the EEOC.  (Id. ¶¶ 36–38; Id., Ex. 1 at 2.)  About a month later on May 28, 2013, Plaintiff filed suit in federal court.  (Dkt. # 1.)  Defendant subsequently filed a Motion to Dismiss that is currently before the Court.  (Dkt. # 3.)

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, "[t]he court accepts 'all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007) (quoting Martin K. Eby Constr. Co. v. Dall. Area Rapid Transit, 369 F.3d 464, 467 (5th Cir. 2004)).  To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl.

Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

## DISCUSSION[4]

Defendant argues that all of Plaintiff's claims except the reprisal termination claim should be dismissed for failure to exhaust administrative remedies.  (Dkt. # 3 at 7.)  Defendant posits two reasons warranting dismissal of the majority of Plaintiff's discrimination claims: (1) Plaintiff failed to file a formal complaint of discrimination within fifteen days of Receiving the Notice of Right to File on April 29, 2010; and (2) Plaintiff failed to timely object within five days of the Agency's November 3, 2010 framing of the issues accepted for investigation and dismissed as untimely.  (Id. at 9.)

A.    Failing to File Formal Complaint of Discrimination Within Fifteen Days of Receiving Notice of Right to File

The exhaustion of administrative remedies is a prerequisite to filing suit, under either Title VII, the ADEA, or the ADA.  See Taylor v. Books A Million, Inc., 296 F.3d 376, 378–79 (5th Cir. 2002) (Title VII claim); Coke v. Gen.

---

[4] Although Local Court Rule 7(e)(2) provides that "[i]f there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed," this Court's practice is to examine the merits of an unopposed motion.

Adjustment Bureau, Inc., 640 F.2d 584, 595 (5th Cir. 1981) (en banc) (ADEA claim)[5]; Dao v. Auchan Hypermarket, 96 F.3d 787, 789 (5th Cir. 1996) (ADA claim).

      In order for a federal-employee plaintiff to exhaust administrative remedies, a federal-employee-plaintiff must first comply with the EEO regulations as set forth in 29 C.F.R. § 1614.105 et seq. To begin, federal employees must "initiate contact with [an EEO] counselor within 45 days of the date of the matter alleged to be discriminator, or in the case of personnel action, within 45 days of the effective date of the action." 29 C.F.R. § 1614.105(a)(1). After an employee initiates contact with an EEO Counselor, the EEO Counselor has thirty days to conduct an interview with the employee. Id. § 1614.105(d). If the matter has not been resolved by the Counselor, aggrieved employee, and employer, the Counselor shall inform the aggrieved person in writing of the right to file a discrimination complaint, not later than the thirtieth day after contacting the Counselor. Id. "The

---

[5] While exhaustion of administrative remedies is always required for Title VII claims, federal employees asserting claims under the ADEA may choose between either pursuing their administrative remedies through their employing agency (the EEO) and the EEOC, or proceeding directly to federal court. Stevens v. Dep't of Treasury, 500 U.S. 1, 5–6 (1991); 29 C.F.R. § 1614.201(a). However, once a plaintiff has decided to pursue his ADEA claim though the EEO administrative process, he must exhaust these administrative remedies before filing an action in federal court. See White v. Frank, 895 F.2d 243, 244 (5th Cir. 1990) (per curiam). Thus, because Plaintiff sought EEO counseling and pursued her Title VII, ADEA, and ADA claims administratively, she is required to exhaust her administrative remedies before filing suit in federal court.

notice shall inform the complainant of the right to file a discrimination complaint within 15 days of receipt of the notice . . . ."  Id.  "A complaint must be filed within 15 days of receipt of the notice . . . ."  29 C.F.R. § 1614.106(b).  If the employee fails to file his or her formal complaint within this fifteen-day period, the agency may dismiss the action.  29 C.F.R. § 1614.107(a)(2).

Defendant seizes upon these regulations to argue that because Plaintiff's Complaint reurges the claims previously dismissed for failure to file a formal complaint within fifteen days, Plaintiff's Complaint should be dismissed for failure to exhaust.  Defendant is certainly correct that where a plaintiff has failed to meet the fifteen-day deadline to file a formal complaint, a plaintiff's claims are subject to dismissal for failure to exhaust.  In Casimier v. U.S. Postal Service, the Fifth Circuit held that because a plaintiff "failed to file a formal EEO complaint within fifteen days of his receipt of the Notice of Final Interview from the Postal Service's EEO Office, as required under 29 C.F.R. § 1614.106(b)," the plaintiff "failed to timely exhaust his administrative EEO remedies."  142 F. App'x 201, 204 n.1 (5th Cir. 2005) (per curiam).  Likewise, in Joseph v. Potter, the court held, "If an employee fails to file a formal EEO complaint within fifteen days of receiving notice of his right to do so, he has failed to timely exhaust his administrative remedies, and he is therefore barred from pursuing his discrimination claim in federal court."  Civil Action No. H-04-1886, 2006 WL

12

1581894, at *2 (S.D. Tex. June 6, 2006) (citing <u>Oaxaca v. Roscoe</u>, 641 F.2d 386, 388 (5th Cir. 1981) (concluding that a federal court properly dismisses a claim where the plaintiff has failed to timely comply with the administrative filing requirements)).

However, Defendant's argument overlooks the fact that Plaintiff's current Complaint before the Court was filed within the fifteen-day time period. Indeed, after receiving her second termination letter on May 13, 2010, Plaintiff initiated another contact with EEO Counselor Ytuarte on June 14, 2010.  Ytuarte sent Plaintiff a Notice of Right to File a Complaint of Discrimination on July 13, 2010, and <u>Plaintiff filed a formal complaint on the fourteenth day—July 27, 2010</u>—within the fifteen-day time limit.

Nevertheless, Defendant is correct that Plaintiff's Complaint reurged the same allegedly discriminatory practices that had been previously dismissed by the EEO Counselor for failure to timely file within the fifteen-day time period. Presumably, Plaintiff reurged the identical claims because she was given a second termination letter with a later termination date.  Thus, the Court must answer the question that logically follows: did the second termination letter allow Plaintiff to reurge her discrimination claims by restarting the applicable time limits required for administrative exhaustion?

1.   <u>Limitations Period Begins on Date of Alleged Unlawful Employment Action</u>

It is well-established that the relevant limitations periods for discrimination claims begin at the time of the allegedly discriminatory decision, even if the consequences of the allegedly discriminatory act do not occur until later.  <u>Del. State Coll. v. Ricks</u>, 449 U.S. 250, 257–58 (1980); <u>see also</u> <u>Christopher v. Mobil Oil Corp.</u>, 950 F.2d 1209, 1217 n.2 (5th Cir. 1992) (holding that in Title VII cases, "the limitations period starts running when the plaintiff knows of the discriminatory act").

In <u>Phillips v. Leggett & Platt, Inc.</u>, the Fifth Circuit held that "the limitations period begins when an employee is unambiguously informed of an immediate or future termination."  658 F.3d 452, 456 (5th Cir. 2011).  There, the employer, Leggett, consolidated two of its Mississippi facilities, and informed Phillips, a sixty-six-year-old employee, that there were no positions available for her at the new facility and that she would be laid off on July 30, 2007.  <u>Id.</u> at 453– 54.  Phillips suspected that she was denied a position at the new facility because of her age.  <u>Id.</u> at 454.  Four business days after Phillips' employment ended, Leggett recalled Phillips to work on a temporary basis at the new facility to assist with consolidation.  <u>Id.</u>  After five months of working on a temporary basis, Phillips was officially terminated on January 2, 2008.  <u>Id.</u>  On March 5, 2008, Phillips filed an

age-discrimination claim with the Equal Employment Opportunity Commission.
Id. Leggett argued that Phillips did not timely file her age-discrimination claim.

On appeal, the Fifth Circuit held that the "limitations period begins on
the date of the alleged unlawful employment action; once the plaintiff has
knowledge sufficient to support the ADEA claim, the 180-day limitations period
begins." Id. at 455 (citing Barrow v. New Orleans S.S. Ass'n, 932 F.2d 473, 477–
78 (5th Cir. 1991)).  The court then looked to Delaware State College v. Ricks, 449
U.S. 250 (1980), wherein in the context of the non-tenured professor's teaching
contract, the Supreme Court had held that the limitations period began to run on
the date the tenure decision was made and communicated to the plaintiff, "even
though one of those effects of the denial of tenure—the eventual loss of
employment—did not occur until later." Id. (citing Ricks, 449 U.S. at 258).  The
court also relied on Chardon v. Fernandez, 454 U.S. 6 (1981), which had held that
when non-tenured professor-plaintiffs were notified by letter that their
appointments would terminate at a specified date in the future, and the Supreme
Court held that the statute of limitations began at "the time of the discriminatory
act, not at the point at which the consequences of the act became painful." Id.
(citing Chardon, 454 U.S. at 6–8).

The court then concluded that Phillips' 180-day limitations period
began on "the date of notice of termination, rather than the final date of

15

employment." Id. at 456 (quoting Clark v. Resistoflex Co., 854 F.2d 762, 765 (5th Cir. 1988)).  As the court explained, the notice of termination must be "based upon an objective standard, focusing upon when the employee knew, or reasonably should have known, that the adverse employment decision had been made.'" Id. (quoting Clark, 854 F.2d at 765).  "The notice of termination must be unequivocal to start the running of the limitations period." Id. (citing Thurman v. Sears, Roebuck & Co., 952 F.2d 128, 133 (5th Cir. 1992)).  Because Phillips was unequivocally told that she would be terminated on July 30, the limitations period began on that date. Id.

Similarly, in McAleer v. Prudential Insurance Company of America, the court addressed whether a second termination letter altered the limitations period for filing a discrimination claim.  928 F. Supp. 2d 280 (D. Mass. 2013). There, a fifty-nine-year-old sales associate, McAleer, failed to meet his sales targets, and as such, his employer, Prudential, informed him of his termination by a letter on July 24, 2009. Id. at 283.  The letter noted that McAleer had accrued fifty-eight days of unused paid time off, and therefore calculated the effective date of his termination as October 13, 2009. Id.  After his last day in the office, and on the first day he began to be paid for his unused vacation days, McAleer requested and received short-term disability leave lasting twelve weeks, until October 17, 2009. Id.  Because McAleer did not spend his unused vacation time while on

16

disability leave, this extended his effective termination date from October 13, 2009 until December 21, 2009.  Id.  Prudential issued McAleer a new termination letter, superceding and replacing the previous letter, and memorializing the new effective termination date.  Id.  It was not until nearly a year later that McAleer filed an age-discrimination complaint with the Equal Opportunity Employment Commission ("EEOC") on August 31, 2010.  Id. at 284.

On appeal, Prudential argued that McAleer's claim should be dismissed because he did not file his claim within the requisite 300 days of July 24, 2009.  Id.  Prudential contended that the July 24, 2009 letter was unequivocal notice of termination and any extensions of the effective date of termination were purely administrative and did not affect whether he would be employed by the company going forward.  Id. at 284–85.  McAleer, on the other hand, argued that because Prudential's November 4, 2009 letter "replaced and superceded" the July 24, 2009 letter and reflects the extension of his effective termination date, he did not have unequivocal notice until November 4, 2009.  Id. at 285.

The court found McAleer's position "untenable for a number of reasons."  Id.  First, the court held that "the existence of a second letter does not change when McAleer had notice of his termination."  The court explained,

> The Supreme Court has made clear that the statute of limitations
> begins to run at the time of the allegedly discriminatory decision, even
> if the plaintiff's employment continues, and the consequences of the
> allegedly discriminatory act—in this case termination—do not occur

17

until later.  <u>Del. State Coll. v. Ricks</u>, 449 U.S. 250, 257–58 (1980).
Prudential notified McAleer of his termination on July 24, 2009.  The
fact that the final consequences of that decision came later does not
change when McAleer learned of the decision.  <u>Nor does a
confirmatory, superceding letter somehow wipe away more than three
months of McAleer's knowledge that Prudential had fired him</u>.

<u>Id.</u> (emphasis added).

Second, the court dismissed McAleer's argument that a reasonable

person would have believed that Prudential had rescinded its decision to terminate

him because his termination date was pushed back for two months.  <u>Id.</u>  Absent any

allegation that McAleer was able to return to work, "the only reasonable

interpretation is that Prudential merely adjusted the effective date of his

termination to account for his short-term disability leave, not that Prudential had

reconsidered his termination, certainly not that it had rescinded its termination."

<u>Id.</u>  Thus, because McAleer did not file his claim with the EEOC 300 days after the

unequivocal July 24, 2009 termination letter, the Court dismissed McAleer's

claims as untimely.  <u>Id.</u> at 285–86.

As a result of the holdings in <u>Phillips</u> and <u>McAleer</u>, this Court can

confidently conclude that the timely filing requirements applicable to Plaintiff's

discrimination claims began to accrue when she was unequivocally notified of her

termination on March 26, 2010.  (Compl. ¶ 27.)  Thus, as of March 26, 2010,

Plaintiff had forty-five days to contact an EEO counselor, which she did, and then

had fifteen days to file a formal complaint after receiving a Notice of Right to File

a Complaint of Discrimination, which she did not.  Failure to abide by these carefully outlined time limits warrants dismissal for failure to adhere to the administrative exhaustion requirements.  See Casimer, 142 F. App'x at 204 n.1; Joseph, 2006 WL 1581894, at *2.

The fact that Plaintiff was issued a second termination is immaterial for purposes of calculating the timely filing deadlines.  As McAleer made clear, "[t]he fact that the final consequences of that decision came later does not change when [Plaintiff] learned of the [termination] decision."  928 F. Supp. 2d at 285.  It was mere happenstance that the Army was required to rescind its first letter of termination because of Plaintiff's status as a federal employee receiving disability retirement benefits from her previous employment with the USDA.  The second termination letter did not alter the required time limits for filing a discrimination claim.  Plaintiff was unequivocally notified of her termination on March 26, 2010; thus, as of that date, Plaintiff was required to abide by the EEO's filing deadlines. The second termination letter does not resurrect Plaintiff's untimely filed discrimination claims to afford Plaintiff another bite at the administrative-exhaustion apple.

2.    Equitable Remedies

Although Plaintiff did not timely file her formal Complaint with the EEO office within the required fifteen-day timeframe, the fifteen-day time limit is

subject to such equitable defenses as waiver, estoppel, and equitable tolling.  29

C.F.R. § 1614.604(c) ("The time limits in this part are subject to waiver, estoppel,

and equitable tolling.").

As a preliminary matter, however, the Court observes that the

equitable defenses of waiver and equitable tolling are not applicable to the instant

action.  Defendant has not waived a limitations defense; in fact, Defendant has

consistently argued that Plaintiff's failure to timely file her Complaint with the

EEO warrants dismissal for lack of administrative exhaustion.  (See Dkt. # 3; see

also id., Ex. 1C.)  Furthermore, equitable tolling is also inapplicable because that

defense applies when: (1) a pending action between parties in the wrong forum; (2)

the plaintiff's unawareness of the facts supporting this claim because defendant

intentionally concealed them; and (3) an agency's misleading the plaintiff about

his/her rights.  Phillips, 658 F.3d at 457 (citing Granger v. Aaron's, Inc., 636 F.3d

708, 712 (5th Cir. 2011)).  The factual allegations recited in Plaintiff's Complaint

do not suggest that any of above scenarios applies.

The third equitable defense, estoppel, bars an employer from asserting

a limitation period as a defense when the employee's failure to comply with the

deadlines was a result of the employer's misconduct.  Rivers v. Geithner, --- F.

App'x ----, 2013 WL 6623542, at *3 (5th Cir. 2013) (per curiam); see also

Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1215 (5th Cir. 1992) (noting that

estoppel is warranted when a "plaintiff's unawareness of the facts necessary to support a discrimination charge or unawareness of his legal rights—is due to defendant's misconduct"); Rhodes v. Guiberson Oil Tools, 927 F.2d 876, 879 (5th Cir. 1991) ("If the defendant did conceal facts or misled the plaintiff and thereby caused the plaintiff not to assert his rights within the limitations period, the defendant is estopped from asserting the EEOC filing time as a defense.")  "The employee 'bears the burden of presenting facts which, if true, would require a court as a matter of law to estop the defendant from asserting the statute of limitations.'" Rivers, 2013 WL 6623542, at *4 (quoting McGregor v. La. State Univ. Bd. of Supervisors, 3 F.3d 850, 865 (5th Cir. 1993)).

Plaintiff is not entitled an estoppel defense because she has not demonstrated any facts that Defendant's second termination affirmatively misled her about her termination date.  See Ramirez v. City of San Antonio, 312 F.3d 178, 184 (5th Cir. 2002) ("A court will equitably toll limitations period only when the employer's affirmative acts mislead the employee.").  The only reason Defendant sent the subsequent letter extending her termination date was because Plaintiff was a former federal employee receiving disability payments from her tenure at the USDA.  The Court cannot conclude that Defendant "intended to induce [Plaintiff] not to file suit."  McGregor, 3 F.3d at 865.  While the second termination letter may have "created a practical problem" for Plaintiff, "it did not alter the legal

21

effect of earlier notice of an allegedly improper employment action." Phillips, 658 F.3d at 458.

B.     Failing to Timely Object to the Agency's Framing of the Issues
       Accepted for Investigation Within Five Days

Defendant also argues that Plaintiff's claims should be dismissed for not objecting to Ytuarte's issue-framing letter within five days. (Dkt. # 3 at 10–11.)

Several courts have concluded that a failure to object to an agency's framing of the issues warrants dismissal. See, e.g., Clayton v. Rumsfeld, 106 F. App'x 268, 271 (5th Cir. 2004) ("Clayton did not object to the framing of the issue by the EEOC and the ALJ, which issue did not include her demotion claim. Thus, Clayton's demotion claim was abandoned, and the employer was not given the opportunity effectively to try to eliminate possible discriminatory practices and policies."); Dollis v. Rubin, 77 F.3d 777, 780 (5th Cir. 1995) (holding that because plaintiff did not object to the issues as stated by the Resolution Complaint Center, summary judgment was appropriate as to those claims given that plaintiff did not exhaust her administrative remedies).

Therefore, when the Army's EEO office made clear which of Plaintiff's claims it would investigate and which claims it would dismiss (due to the previous untimely filing) and provided Plaintiff with an opportunity to object in writing within five days of its November 3, 2010 determination, Plaintiff's failure

to object constitutes abandonment.  Consequently, Plaintiff failed to exhaust her administrative remedies.

CONCLUSION

For the aforementioned reasons, the Court **GRANTS** Defendant's Motion to Dismiss Plaintiff's hostile work environment and reasonable accommodation claims (Dkt. # 3).  However, the Court notes that Plaintiff's reprisal termination claim is not dismissed.

**IT IS SO ORDERED.**

**DATED:** San Antonio, Texas, January 17, 2014.

_____

David Alan Ezra
Senior United States Distict Judge