IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| LAURA L. WRIGHT, | ) | CV. NO. 5:13-CV-449-DAE |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| JOHN McHUGH, Secretary, | ) | |
| Department of the Army, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

ORDER: (1) DENYING PLAINTIFF'S MOTION TO AMEND COMPLAINT;
(2) GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Before the Court is a Motion to Amend the Complaint filed by

Plaintiff Laura L. Wright ("Plaintiff") (Dkt. # 40) and a Motion for Summary

Judgment filed by Defendant John McHugh, Secretary, Department of Army

("Defendant") (Dkt. # 41).  On August 11, 2014, the Court heard argument on both

motions.  Robert Shaw-Meadow, Esq., appeared at the hearing on behalf of

Defendant; Anita Anderson, Esq., appeared on behalf of Plaintiff.  For the reasons

that follow, the Court **DENIES** Plaintiff's Motion to Amend Complaint and

**GRANTS** Defendant's Motion for Summary Judgment.

BACKGROUND

On May 28, 2013, Plaintiff filed suit in federal court alleging

violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age

Discrimination in Employment Act ("ADEA"), and the Americans with

Disabilities Act ("ADA").  ("Compl.," Dkt. # 1.)  Plaintiff claimed that Defendant

engaged in unlawful discrimination by subjecting her to harassment, a hostile work

environment, and reprisal on the basis of her age, disability (Attention Deficient

and Hyperactivity Disorder), and sex (female).  (Id. ¶ 8.)

Plaintiff is a former civilian veterinarian for the Department of the

Army at Fort Sam Houston in the Army's Anesthesia Support team, Animal

Medicine Branch.  (Id. ¶ 6.)  Plaintiff's duties included the care, treatment, and

management of laboratory animals and government-owned animals used for

training soldiers for emergency and combat medical treatment.  (Id. ¶ 9.)

On December 29, 2009, Dr. Rohde counseled Plaintiff regarding

several of Plaintiff's behaviors that were inappropriate for the workplace.  (Id.

¶ 12.)  Dr. Rohde's memorandum listed behaviors such as: eavesdropping,

interrupting conversations, overreacting and misinterpreting overheard

conversations, barging into other employees' cubicles to talk and interrupting their

work without consent, discussing matters related to the Army's mission with

superiors not in Plaintiff's chain-of-command and with strangers.  (Id.)  At the

2

meeting, Dr. Rohde instructed Plaintiff to announce "knock-knock" before entering someone else's cubicle and to quit sending emails to other employees.  (Id. ¶ 15.) Dr. Rohde also reprimanded Plaintiff for setting up a study session without her approval for an upcoming veterinary exam related to the use of animals by the military and other federal agencies.  (Id.)

On January 8, 2010 and January 9, 2010, Dr. Rohde again counseled Plaintiff about her behaviors.  (Id. ¶ 16.)  Plaintiff asked Dr. Rohde to consider the impact of her ADHD.  (Id.)

On February 8, 2010, Dr. Rohde and Dr. Deaton, Dr. Rohde's supervisor, counseled Plaintiff once again.  (Id. ¶ 17.)  At this meeting, Plaintiff asked both supervisors to accommodate her ADHD and referred them to a website providing recommended accommodations for a wide variety of disabilities covered by the ADA.  (Id.)  She also gave both supervisors a copy of "ADHD for Dummies."  (Id.)  After the meeting, Plaintiff distributed ADHD literature to her coworkers, which she was later reprimanded for.  (Id. ¶ 18.)

On March 1, 2010, Plaintiff requested an accommodation, which included being moved away from other cubicles because of the serious distraction and her inability to tune it out.  (Id. ¶ 19.)  Dr. Rohde denied that request.  (Id.)

On March 5, 2010, during a training exercise, Plaintiff improperly anesthetized a goat.  (Id. ¶¶ 22–24.)  During the exercise, she administered the first

3

dosage of anesthesia, but the goat did not respond.  (Id. ¶ 22.)  She then gave the goat additional anesthesia.  (Id.)  According to Plaintiff, "[t]he goat went down[,] but was over-anesthetized and needed 'bagging' i.e., oxygen and monitoring to prevent tachycardia until the animal is stabilized, a time-consuming activity."  (Id.) Dr. Rohde reprimanded Plaintiff for the improper anesthetization.  (Id. ¶ 24.)

On March 10, 2010, Plaintiff informed Dr. Rohde that she was planning on submitting her required written reasonable accommodation forms.  (Id. ¶ 20.)  On March 17, 2010, Plaintiff filed her formal request for reasonable accommodation and gave a copy to Dr. Rohde.  (Id. ¶ 25.)  In Plaintiff's request, she sought leave to have her ADHD medications adjusted, a cubicle change, and more structuring of her required activities to prevent disruption of other employees' activities.  (Id.)  That same day, Dr. Rohde filed a formal request for permission to terminate Plaintiff.  (Id. ¶ 26.)

On March 26, 2010, Dr. Rohde issued Plaintiff a letter of termination effective April 2, 2010.  (Id. ¶ 27.)  The letter stated that Plaintiff's termination was due to an improper anesthetization of a goat on March 5, 2010, interruption of others' conversations, not being respectful of other employees' work spaces and privacy, interrupting training classes with comments unrelated to the topic, distracting others from their focus on work, discussing the mission with outsiders, and being rude and unprofessional.  (Id. ¶ 28.)

4

On March 30, 2010, Plaintiff contacted Equal Employment Opportunity ("EEO") Counselor Ernest Ytuarte to allege that her receipt of a termination letter was retaliation for her request for a reasonable accommodation and to allege that she was subjected to discrimination on the basis of her age, disability, and sex. (Dkt. # 3, Ex. 1 ¶ 5.) Ytuarte conducted her intake counseling on April 1, 2010. (Id.) On April 29, 2010, Ytuarte provided Plaintiff a Notice of Right to File a Formal Complaint. (Id.) The Notice advised Plaintiff that she had fifteen days from receipt of the notice to file her complaint. (Id.) Plaintiff's counsel, Lorenzo Tijerina, acknowledged receipt of the notice on April 29, 2010 by email. (Id.) However, Plaintiff did not file a Complaint within the fifteen-day time period, and Ytuarte closed the docket. (Id.)

On May 13, 2010, Plaintiff was issued a second termination letter. (Compl. ¶ 30.) The second letter advised that Plaintiff's effective termination date was changed to May 13, 2010 because Plaintiff would receive disability payments from March 26, 2010 to May 13, 2010, as a result of Plaintiff's respiratory illness and post-traumatic stress disorder from her prior employment at the United States Department of Agriculture ("USDA"). (Id.)

On June 14, 2010, Plaintiff again contacted EEO Counselor Ytuarte. (Dkt. # 3, Ex. 1 ¶ 6.) Plaintiff alleged her previous complaints of hostile work environment discrimination on the basis of her age, disability, and sex, and denial

5

of a reasonable accommodation.  (Id.)  In a letter to Plaintiff's counsel dated July

13, 2010, Ytuarte explained that he did not accept Plaintiff's complaints of age,

disability, and sex discrimination because those claims were identical to earlier

claims that had expired.  (Dkt. # 3, Ex. 1-C.)  Ytuarte stated,

> Paragraph (b) (1-20) [describing the alleged harassment] is dismissed
> in accordance with the referenced provisions of 29 Code of Federal
> Regulations (CFR) 1614.107(a)(2), which states that a complaint that
> fails to comply with the applicable time limits specified in 1614.105
> and 1614.106 may be dismissed.  29 C.F.R. 1614.106(b) states that a
> formal complaint of discrimination must be filed within 15 calendar
> days from receipt of the "Notice of Right to File" which gives the
> complainant notice of his/her right to file a formal complaint.
> You/your client made previous contacts with the EEO office,
> specifically 30 March 2014, subsequently, you/your client received a
> Notice of Right to File on 29 April 2010 via email and acknowledged
> receipt of such; and did not pursue an EEO complaint within the
> required timeframe.  To allege discrimination and continuous
> harassment for the time period in question prior to 29 April 2010
> would be untimely filed as you/your client had the opportunity to
> pursue this claim during her previous contacts with the EEO office.

(Id. (emphasis added))  However, Ytuarte advised that he did accept Plaintiff's

reprisal claim.  (Id.)  According to Ytuarte, the new complaint of reprisal was

based on the second termination letter, issued May 13, 2010, and therefore was a

"new claim" that was timely filed.  (Id.)  Ytuarte stated that the letter operated as a

"partial dismissal" of Plaintiff's complaint and that "[i]f [Plaintiff] believe[d] the

claims in this complaint ha[d] not been correctly identified, please notify [Ytuarte],

in writing, within five (5) calendar days after you receive this letter, and specify

why you believe the claims have not been correctly identified." (Id.)

On July 27, 2010, Plaintiff filed a formal complaint of discrimination and reprisal with the Department of Army. (Compl. ¶ 31.) On February 2, 2011, the Department conducted a formal investigation and fact-finding conference. (Id.) The investigator did not find that Plaintiff was subject to either discrimination or reprisal. (Id.)

In May 2011, Plaintiff filed charges against Defendant with the Equal Employment Opportunity Commission ("EEOC"). (Id. ¶ 32.) Plaintiff requested a formal hearing and investigation. (Id.) Nearly two years later, on April 24, 2013, the administrative law judge assigned to the case issued an order setting a hearing on April 30, 2013. (Id. ¶ 35.) On April 25, 2013, Plaintiff informed the administrative law judge that because the EEOC had not issued a final decision within 180 days, Plaintiff intended to pursue her claims in federal court and therefore withdrew her complaint with the EEOC. (Id. ¶¶ 36–38; Id., Ex. 1 at 2.) About a month later on May 28, 2013, Plaintiff filed suit in federal court. (Dkt. # 1.)

Defendant subsequently moved to dismiss Plaintiff's hostile work environment and reasonable accommodation claims—but not Plaintiff's reprisal claim—based on Plaintiff's lack of timely filing an EEO complaint. (Dkt. # 3.) Plaintiff did not respond. On January 17, 2014, the Court held a hearing on

Defendant's Motion to Dismiss and that same day, issued an Order granting the Motion. (Dkt. # 13.)

In its Order, the Court held that the relevant limitations period for Plaintiff's hostile work environment and reasonable accommodation claims began at the time Plaintiff knew of the allegedly discriminatory act. (Id. at 14 (citing Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1217 n.2 (5th Cir. 1992)).) Relying on Phillips v. Leggett & Platt, Inc., 658 F.3d 452, 456 (5th Cir. 2011) and McAleer v. Prudential Insurance Company of America, 928 F. Supp. 2d 280 (D. Mass. 2013), the Court concluded that Plaintiff's timely filing deadlines applicable to her discrimination claims began to accrue when she was unequivocally notified of her termination on March 26, 2010, because that event was the allegedly discriminatory act. (Id. at 18.) Given that Plaintiff had failed to file a formal complaint within the requisite fifteen-day time period after receiving her Notice of Right to File a Complaint of Discrimination as prescribed by 29 C.F.R. § 1614.106(b), the Court dismissed Plaintiff's hostile work environment and reasonable accommodation claims for failure to exhaust administrative remedies. (Id. at 19.)

The Court also held that the second termination letter did not revive her untimely filed claims. (Id. (citing McAleer, 928 F. Supp. 2d at 285 ("[T]he fact that the final consequences of that decision came later does not change when

8

[Plaintiff] learned of the [termination] decision.")))  The Court concluded,

"Plaintiff was unequivocally notified of her termination on March 26, 2010; thus,

as of that date, Plaintiff was required to abide by the EEO's filing deadlines.  The

second termination letter does not resurrect Plaintiff's untimely filed

discrimination claims to afford Plaintiff another bite at the administrative

exhaustion apple."  (Id.)

Although the Court dismissed Plaintiff's hostile work environment

and reasonable accommodation claims, the Court noted that Plaintiff's reprisal

termination claim was not dismissed.  (Id. at 23.)  The Court specifically excepted

Plaintiff's reprisal claim because of Defendant's proffer to the Court in his Motion

to Dismiss:

> Because this Motion is directed to Plaintiff's non-termination hostile
> work environment and reasonable accommodation claims, but not to
> Plaintiff's claim of wrongful termination based on reprisal, Defendant
> is also filing today an Answer to Plaintiff's Complaint.  If granted,
> this Motion will dispose of all of Plaintiff's claims except her claim
> that she was terminated in reprisal for making an EEO request for
> reasonable accommodation.

(Dkt. # 3 at 1 (emphasis added).)

After Defendant learned of the Court's timely exhaustion analysis

outlined in its Order, he sought leave to amend his Answer to assert an affirmative

defense of failure to timely exhaust administrative remedies against Plaintiff's

"wrongful termination claim."  (Dkt. # 16.)  The Court denied Defendant's request

9

as moot because Plaintiff did not plead a "wrongful termination claim" and to the extent that her hostile work environment and discrimination claims could be understood as "wrongful termination claims," they had been dismissed by the Court's previous Order granting Defendant's Motion to Dismiss.  (Dkt. # 24.)

Defendant again sought leave to amend his Answer.  (Dkt. # 25.) Defendant averred that he was "imprecise in identifying Plaintiff's reprisal termination claim as a 'wrongful termination' claim."  (Id. ¶ 3.)  As a result, Defendant moved to assert an untimely administrative exhaustion defense in his Answer against Plaintiff's reprisal claim.  On May 19, 2014, the Court held a status conference to discuss Defendant's second Motion for Leave to Amend his Answer. Plaintiff's counsel failed to appear.  The Court granted Defendant's Motion.  (Dkt. # 29.)

On July 1, 2014, Plaintiff filed the instant Motion to Amend Complaint.  (Dkt. # 40.)  Defendant timely responded to Plaintiff's Motion to Amend.  (Dkt. # 51.)  Also on July 1, 2014, Defendant filed the instant Motion for Summary Judgment.  (Dkt. # 41.)[1]  The Court set a hearing on Plaintiff's Motion to

---

[1] Defendant also filed several other motions, including: (1) a Motion to Exclude Opinion or Medical Record (Dkt. # 23); (2) a Motion to Strike Late Designation of Plaintiff's Proposed Witnesses (Dkt. # 36); and (3) a Motion to Conduct Rule 35 Psychiatric Examination and Psychological Testing (Dkt. # 38).  However, the Court will first address Defendant's Motion for Summary Judgment and Plaintiff's Motion to Amend because they are dispositive of the outcome of the action.

Amend Complaint and on Defendant's Motion for Summary Judgment for August

5, 2014. (Dkt. # 46.) Plaintiff subsequently requested a two-week extension to file

her Response, which the Court granted. The Court reset the hearing for Monday,

August 11, 2014 to accommodate Plaintiff's extension. (Dkt. # 50.) On August 1,

2014, the day Plaintiff's Response was due, Plaintiff requested another three-day

extension, which the Court also granted. However, on August 4, 2014, Plaintiff

did not file a Response.

        On Friday, August 8, 2014, Plaintiff filed a Motion for Leave to File

Response, asserting that her Response would not impose a hardship on Defendant,

that allowing such a filing is in the best interests of justice, and that her failure to

complete her Response in a timely fashion was because the Response "involves

challenging facts and changing law," which is "due solely to matters beyond her

control and not to conscious indifference." (Dkt. # 54.) The Court denied

Plaintiff's Motion for Leave to File Response. (Dkt. # 56.) The Court first

reasoned that Plaintiff's eleventh-hour request would impose a hardship on both

Defendant and the Court because neither would have sufficient time to research the

merits of Plaintiff's Response. (Id. at 1.) The Court also noted that although

Plaintiff claimed that her Response implicated challenging facts and changing law,

the facts were not unique and the regulation Plaintiff relied upon had been in effect

since 2009. (Id. at 2.)

On Sunday, August 10, 2014, the night before the hearing, Plaintiff filed a Motion for Reconsideration of the Court's Order denying her leave to file a response. (Dkt. # 75.) The Court denied this Motion at the hearing. Nevertheless, the Court allowed Plaintiff to argue the merits of her Response during oral argument.

## DISCUSSION

Plaintiff's only remaining claim is one for reprisal. According to her current Complaint, she alleges that her discharge was "in reprisal for having filed an EEO request for her disability." (Compl. ¶ 8.) This claim refers to Plaintiff's requested accommodation made on March 17, 2010 and her receipt of her first termination letter on March 26, 2010. According to Plaintiff, the timing of her request and the first termination letter establishes a causal connection that she was retaliated against for making a reasonable accommodation request for her ADHD disability.

## I.    Plaintiff's Motion to Amend

Plaintiff requests leave to amend her Complaint to "correct in-artful language that created any impression or conclusion that Plaintiff had self-diagnosed herself with her disability." (Dkt. # 40 at 2.) She also seeks to "correct dates previously mis-stated" and "add specificity to the applicable dates for exhausting administrative remedies." (Id.) Defendant opposes such leave to

12

amend, arguing that the motion is untimely, attempts to materially change her allegations, and the proposed amendments are unnecessary because they either relate to claims which have already been dismissed or are reliant upon legal theories that the Court has already rejected.  (Dkt. # 51 at 1–5.)

"Rule 15(a) requires a trial court to grant leave to amend freely, and the language of this rule evinces a bias in favor of granting leave to amend." Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n, 751 F.3d 368, 378 (5th Cir. 2014) (quoting Jones v. Robinson Prop. Grp., LP, 427 F.3d 987, 994 (5th Cir. 2005)).  Though leave to amend should be freely given "when justice so requires," Fed. R. Civ. P. 15(a)(2), a court may deny amendment for numerous reasons, including "undue delay, bad faith or dilatory motive on the part of the movant . . . or futility of a proposed amendment."  United States ex rel. Steury v. Cardinal Health, Inc., 625 F.3d 262, 270 (5th Cir. 2010).

However, this Court's Scheduling Order mandated that both parties file their motions to amend pleadings by January 31, 2014—effectively seven months before Plaintiff filed the instant Motion to Amend.  (Dkt. # 10.)  "Rule 16(b) governs amendment of pleadings after a scheduling order deadline has expired."  S&W Enters., L.L.C. v. Southtrust Bank of Ala., NA, 315 F.3d 533, 536 (5th Cir. 2003).  Under Rule 16(b), a party seeking to modify a scheduling order must show good cause.  See Fed. R. Civ. P. 16(b); Reliance Ins. Co. v. La. Land &

13

Exploration Co., 110 F.3d 253, 257 (5th Cir. 1997).  This good cause standard

focuses on the diligence of the party asking the court to modify the scheduling

order.  S & W Enters., 315 F.3d at 535.  To demonstrate good cause, the movant

must show that, despite diligence, he could not have reasonably met the scheduling

deadline.  6a Wright & Miller § 1522.1 at 231 (2d ed. 1990).  The Fifth Circuit

uses four factors to assess whether a party has satisfied the good cause standard:

The test consists of the following factors: "(1) the explanation for the failure [to

timely move to amend]; (2) the importance of the [amendment]; (3) potential

prejudice in allowing the [amendment]; and (4) the availability of a continuance to

cure such prejudice."  S & W Enters., 315 F.3d at 536 (quoting Reliance Ins.

Co.,110 F.3d at 257).

     A.    Explanation for the Failure to Timely Move for Leave to Amend

        Because Plaintiff framed her argument in support of her proposed

amendment exclusively in terms of Rule 15(a), she neglected to give any reason

for her failure to timely move for leave to amend.  In any event, the Court finds

that Plaintiff cannot show good cause for her delay.  Plaintiff does not allege that

she became aware of additional facts after she filed her original Complaint; no new

facts have come to light.  See Udoewa v. Plus4 Credit Union, Civil Action No. H-

08-3054, 2010 WL 1169963, at *2 (S.D. Tex. Mar. 23, 2010) ("In the context of a

motion for leave to amend, the court may deny the motion if the movant knows or

should have known of the facts upon which the proposed amendment is based but fails to include them in the original complaint." (internal quotation marks and citations omitted)).

>    B.    Importance of the Amendment

Although Plaintiff does not address the importance of amendment either, her amendments are not sufficiently important to warrant Plaintiff's untimely motion for leave to amend.  She proposes the following language in paragraphs 35 and 36:

> 35. On May 13, 2010, Rohde formally revoked the initial termination and effective date.  She forwarded Dr. Wright a letter in which she stated that the termination letter of March 26, 2010 effective April 2d, "**is hereby cancelled in its entirety**."  She was to be carried on administrative leave from March 26th to May 13th in relation to a partial disability retirement annuity for respiratory illness caused by her work at the USDA.  With this letter, Rohde also issued Dr. Wright an identical termination letter which stated that her **termination was effective as of May 13, 2010**.

> Exhaustion of Administrative Remedies:

> 36. The operative deadlines for filing of a complaint of discrimination or reprisal are set out in 29 C.F.R. 1615.105(a)(1)[2] an "aggrieved person must initiate contact with an EEO counselor within 45 days of the matter alleged to be discriminatory, or, **in the case of a personnel action, within 45 days of the effective date of the action**."

(Dkt. # 40, Ex. 1 ¶¶ 35–36.)  Essentially, Plaintiff seeks to assert additional legal

---

[2] Although Plaintiff refers to 29 C.F.R. § 1615.105(a)(1), this must be a typographical error because the relevant section is 29 C.F.R. § 1614.105(a)(1).

argument bearing on the termination letter and the exhaustion of administrative remedies.

        The Court is—once again—perplexed by Plaintiff's persistence in maintaining that she has timely exhausted her administrative remedies.  As this Court has twice explained, the commencement of the limitations period for purposes of administrative exhaustion begins when an employee knows or reasonably should know that an adverse employment decision has been made, which in this case was March 26, 2010 when Plaintiff received notice that she was terminated—not when the final consequences of that decision manifest.  (See Dkt. # 13 at 15–16 (relying on the Fifth Circuit's decision in Phillips to hold that the timely filing requirements begin on "the date of the notice of termination, rather than the final date of employment"); Dkt. # 24 at 11 (same).)  As such, Plaintiff's timely filing requirements for her reprisal claim started on March 26, 2010 because that is the date that she alleged she was terminated for making a reasonable accommodation request.  While she did contact an EEO Officer within the requisite forty-five-day period on March 30, 2010, she failed to file a formal complaint within the requisite fifteen days after she received her Notice of Right to File a Formal Complaint on April 29, 2010.  The second termination letter did not resuscitate her untimely filed reprisal claim.  (See Dkt. # 13 at 13–19 (relying on McAleer to hold that a second termination letter does not revive untimely filed

16

claims); <u>see also</u> <u>Garnica v. Zale Lipshy Univ. Hosp.</u>, 3:03-CV-0637-P, 2004 WL

330675, at *3 n.2 (N.D. Tex. Feb. 10, 2004) ("Plaintiff's second filing of the

retaliation claim does not revive her first untimely filing of the retaliation claim.

This is because the time limitations of 42 U.S.C. § 2000e-5(f)(1) would be

meaningless if potential Title VII plaintiffs could evade those requirements simply

by re-filing their charge of discrimination." (citing <u>Soso Liang Lo v. Pan American</u>

<u>World Airways, Inc.</u>, 787 F.2d 827, 828 (2d Cir. 1986))).)  Because the

amendments Plaintiff seeks to include are really only legal arguments that the

Court has already rejected, the importance of Plaintiff's amendment is minimal.

      C.    <u>Potential Prejudice in Allowing the Amendment</u>

      Defendant argues that it will be prejudiced by Plaintiff's late

amendment because he already prepared and filed his July 1, 2014 Motion for

Summary Judgment based on Plaintiff's original Complaint.  (Dkt. # 51 at 3.)  The

Court agrees that "requir[ing] Defendant to file a duplicative Motion for Summary

Judgment would significantly prejudice Defendant."  <u>Brooks v. AAA Cooper</u>

<u>Transp.</u>, CIV.A. H-10-0818, 2011 WL 644746, at *1 (S.D. Tex. Feb. 10, 2011).

      D.    <u>Availability of a Continuance to Cure Such Prejudice</u>

      Defendant posits that the "entire litigation has been characterized by

Plaintiff's undue delay."  (Dkt. # 51 at 2.)  He cites the following examples of

Plaintiff's delay:

a. Plaintiff failed to file any response to Defendant's August 30, 2013 Motion to Dismiss (Dkt. # 3).

b. Plaintiff missed her March 3, 2014 deadline to respond to Defendant's Requests for Production, notwithstanding two agreed extensions of time.

c. Plaintiff failed to file any response to Defendant's April 23, 2014 Motion to Compel (Dkt. # 21)

d. Plaintiff failed to timely comply with Judge Mathy's May 5, 2013 Order to Compel (Dkt. # 26).

e. Plaintiff failed to timely designate Dr. Perry or Dr. Taylor as expert witnesses.

f. Plaintiff failed to timely provide treatment records from Dr. Taylor, and still has not produced such records.

(Id.)  The Court agrees that a continuance is unwarranted given the extensive delay.

In sum, Plaintiff has not established good cause for her untimely delay in seeking to amend her Complaint.  Accordingly, the Court **DENIES** Plaintiff's Motion to Amend her Complaint.

II.    Defendant's Motion for Summary Judgment

A.    Local Rule 7(e)(2)

Pursuant to Local Rule 7(e)(2), "[i]f there is no response filed within the time period prescribed by this rule, the court may grant the motion as unopposed."  W.D. Tex. Civ. R. 7(e)(2).  Although Plaintiff attempted to file a Response on Friday, August 8, 2014 (with the hearing scheduled for Monday,

August 11, 2014), the Court denied such an untimely Motion for Leave to File a Response. (Dkt. # 56.) Given that Plaintiff did not timely file a Response, Local Rule 7(e)(2) permits this Court to grant Defendant's Motion as unopposed. Nonetheless, the Court will independently examine the merits of Defendant's Motion and Plaintiff's arguments in opposition presented at the hearing.

B.     <u>Administrative Exhaustion</u>

Defendant argues that Plaintiff's reprisal claim should also be dismissed because she failed to file her formal EEO Complaint within the requisite fifteen-day administrative deadline. (Dkt. # 41 at 6.) Seizing upon the Court's analysis in its earlier Order, he contends that the second termination letter permitting Plaintiff to receive retroactive administrative leave due to her tenure at the USDA did not revive her untimely filed reprisal claim. (<u>Id.</u> at 6–7.)

The Court agrees. Plaintiff's reprisal claim is based on allegedly being terminated on March 26, 2010 because she made a reasonable accommodation request for her alleged ADHD disability on March 17, 2010. (Compl. ¶ 8.) For the reasons set forth in the Court's Order granting Defendant's Motion to Dismiss (namely, that Plaintiff's claim was made after the first termination letter, Plaintiff failed to timely file a formal complaint within fifteen days, and the second termination letter did not alter the administrative deadlines), Plaintiff did not properly exhaust her administrative remedies. (<u>See</u> Dkt. # 13 at

11–20.)

At the hearing, Plaintiff made two arguments in support of her contention that she timely filed her reprisal claim.  First, she asserted that EEO Officer Ernest Ytuarte's acceptance of Plaintiff's reprisal claim conclusively established that it was timely exhausted or that Defendant has waived any timeliness challenge.  Second, she urged the Court to consider 29 C.F.R. § 1614.105(a)(1) wherein she emphasizes that the relevant inquiry is on the "effective date" because that section states that "[a]n aggrieved person must initiate contact with a Counselor within 45 days of the date of the matter alleged to be discriminatory or, in the case of personnel action, within 45 days of the effective date of the action."

Plaintiff's first argument is without merit.  While EEO Officer Ernest Ytuarte did accept Plaintiff's reprisal claim, he purportedly assumed[3] Plaintiff's reprisal claim was predicated on the second termination letter being in retaliation for Plaintiff's contact with the EEO Officer after the first termination letter.  However, Plaintiff's original Complaint unmistakably characterizes her reprisal

_____

[3] The Court bases this assumption on the fact that Ytuarte denied Plaintiff's discrimination claims filed after the second termination letter because they were identical to the claims asserted after the first termination letter, but did not deny her reprisal claims.  The only way the Court can conceive Ytuarte would make such a determination would be if the reprisal claim asserted after the second termination letter differed from her reprisal claim asserted after the first termination letter.

claim as relating to her filing an EEO request for her disability on March 17, 2014—not the second termination letter.

Moreover, even if Ytuarte accepted Plaintiff's reprisal claim, his acceptance does not conclusively establish that Plaintiff's claim was timely.  In Rowe v. Sullivan, the Fifth Circuit held that the EEOC's docketing and acting on a plaintiff's request for reconsideration does not waive a subsequent timeliness argument.  967 F.2d 186, 191 (5th Cir. 1992).  Rather, "[i]n order to waive a timeliness objection, the agency must make a specific finding that the claimant's submission was timely."  Id. (citing Munoz v. Aldridge, 894 F.2d 1489, 1494–95 (5th Cir. 1990)).  Even a "mere statement" that a claimant's request is timely "does not suffice because agencies may overlook timeliness problems and should not thereafter be bound."  Id. (quoting Henderson v. United States Veterans Admin., 790 F.2d 436, 4414 (5th Cir. 1986)).  Here, Ytuarte made no such statement, let alone a finding that Plaintiff's reprisal claim was timely.

Plaintiff's second argument does not fare better.  She argues that because 29 C.F.R. § 1614.105(a)(1) uses the phrase "effective date of the [personnel] action," her reprisal claim was timely because she submitted it within the allotted time periods after the second termination letter's effective date of discharge.  However, the Fifth Circuit—even when relying on § 1614.105(a)(1)'s "effective date of the action" language—has held that "[i]n Title VII cases, 'the

21

limitations period starts running when the plaintiff knows of the discriminatory act.'" Austin v. Potter, 358 F. App'x 602, 605 (5th Cir. 2010) (quoting Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1217 n.2 (5th Cir. 1992)). Plaintiff's reprisal claim refers to her requested accommodation made on March 17, 2010 and the receipt of her first termination letter on March 26, 2010.  As a result, the limitations period for her reprisal claim unequivocally began on March 26, 2010, when she alleges Defendant retaliated against her for making a reasonable-accommodation request.  Plaintiff's "re-filing" of her reprisal claim after she received her second termination letter did not change when she "kn[ew] of the discriminatory act" of allegedly terminating her for requesting an accommodation.  Id.

> C.   Prima Facie Case

Defendant next argues that even if Plaintiff properly exhausted her administrative remedies, she fails to state a prima facie case for reprisal because the timing indicates there was no retaliatory motive.  (Dkt. # 41 at 7–8.) According to Defendant, Plaintiff's suggestion that a close temporal proximity exists between her March 17, 2010 formal request for accommodation and the March 26, 2010 termination letter is unfounded because Dr. Rohde planned Plaintiff's termination far in advance of March 26, 2010.  (Id. at 8.)  Dr. Rohde explained, "it takes time to terminate someone and to have all of your documents

22

in order, [which was] long before [Plaintiff] ever went to reasonable accommodation." ("Rohde Dep.," Dkt. # 43, Ex. 4, 160:20–161:1, Feb. 2, 2011.) She initiated discussions with Human Resources regarding terminating Plaintiff's employment sometime in January or February, at least "several weeks" before the March 26, 2010 decision. (Id. 157:14–22.) Defendant is correct that "[e]mployers . . . proceeding along lines previously contemplated, though not yet definitely determined, is no evidence whatsoever of causality." Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 272 (2001).

Moreover, Plaintiff has not tendered any evidence to counter Dr. Rohde's affirmation that Plaintiff's reasonable accommodation request factored into her termination. Although a court must "review the facts drawing all inferences most favorable to the party opposing the motion," Rosado v. Deters, 5 F.3d 119, 122 (5th Cir. 1993) (quoting Reid v. State Farm Mut. Auto. Ins. Co., 784 F.2d 577, 578 (5th Cir. 1986)), when the nonmoving party fails to make the requisite showing of an issue of material fact and the moving party has met his summary judgment burden, the movant is entitled to summary judgment. Fed. R. Civ. P. 56(c); Campbell v. Sonat Offshore Drilling, 979 F.2d 1115, 1119 (5th Cir. 1992).

D. Legitimate, Non-Retaliatory Reasons

Finally, Defendant contends that summary judgment is appropriate

23

because even assuming Plaintiff had established a prima facie case, Plaintiff was terminated for four legitimate, non-retaliatory reasons, which she cannot demonstrate were pretextual.  (Dkt. # 41 at 9–10.)

Once a plaintiff establishes a prima facie case of unlawful retaliation, the burden of production shifts to the defendant to articulate legitimate, non-retaliatory reason for the adverse employment action.  See Jenkins v. Cleco Power LLC, 487 F.3d 309, 316–17 (5th Cir. 2007).  The defendant may meet their burden "through the introduction of admissible evidence, reasons for its action which, 'if believed by the trier of fact,' would support a finding that unlawful discrimination was not the cause of the employment action." Brown v. Bunge Corp., 207 F.3d 776, 781 (5th Cir. 2000) (quoting St. Mary's Honor Center v. Hicks, 509 U.S. 502, 507 (1993)).  If the defendant meets their burden of production, the burden then shifts back to the plaintiff to demonstrate that the defendant's proffered reason is pretextual.  Id.  In the context of a retaliation claim, "the employee's ultimate burden is to prove that the employer's stated reason for the adverse employment action was merely a pretext for the real, retaliatory purpose."  Septimus v. Univ. of Hous., 399 F.3d 601, 608 (5th Cir. 2005).

Defendant asserts that Plaintiff was terminated for interfering with combat medic and instructor training, for interfering with co-workers' ability to perform their work, jeopardizing the operational security of the mission by sharing

information with others who did not have a need-to-know, and inappropriately anesthetizing and euthanizing a training animal.  (Dkt. # 41 at 10–11.)  These reasons could lead a trier of fact to find that Plaintiff's reasonable accommodation request was not the cause of her termination with the Army.  Therefore, Defendant has satisfied his burden of production.

Plaintiff, however, has not demonstrated any facts to believe that these reasons were pretextual.  See Miles-Hickman v. David Powers Homes, Inc., 589 F. Supp. 2d 849, 870 (S.D. Tex. 2008) (holding that "[f]or summary judgment purposes, [a plaintiff] must next demonstrate that a material issue of fact exists about whether the defendant's explanation is pretextual").  Because Plaintiff has not shown any facts to believe that Defendant's four explanations were pretextual, summary judgment is appropriate.

<u>CONCLUSION</u>

For the aforementioned reasons, the Court **DENIES** Plaintiff's Motion to Amend Complaint and **GRANTS** Defendant's Motion for Summary Judgment.  All other pending motions are **DENIED AS MOOT**.

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, August 13, 2014.

_____
David Alan Ezra
Senior United States District Judge

25